UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JAMES STEWART,

                Plaintiff,

v.

J. RUSH et al.,

                Defendants.

_____/

Case No. 2:21-cv-101

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's claims against Defendants MacDonald, MacDowell, Wollan, and Batho for failure to state a claim. Plaintiff's Eighth Amendment excessive force claim against Defendants Bernhardt and Rush remains in the case. Additionally, the Court will deny Plaintiff's motion for the appointment of counsel (ECF No. 5) and request for the entry of default (ECF No. 11), and will grant Plaintiff's motion to

dismiss parties (ECF No. 6).  Pursuant to Plaintiff's request in his motion, Plaintiff's claims against

Defendants Smith and Buchanon will be dismissed without prejudice.

**Discussion**

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections

(MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan.  The

events about which he complains, however, occurred at the Chippewa Correctional Facility (URF)

in Kincheloe, Chippewa County.  Plaintiff sues the following URF officials:  Correctional Officers

J. Rush, M. MacDonald, and Unknown Wollan; Nurses Tristina Smith, Amy MacDowell, and

Brenda Buchanon; Sergeant Unknown Bernhardt; and Acting Assistant Deputy Warden (A/ADW)

Robert Batho.  (Compl., ECF No. 1, PageID.1–3.)

In Plaintiff's complaint, he alleges that on September 24, 2020, at 5:45 p.m.,

Sergeant Bernhardt and Correctional Officer Rush "punched and kneed [Plaintiff's] arm" from the

top slot of the cell door.  (*Id.*, PageID.4.)  From the top slot of the cell door, Correctional Officer

Rush also "tased [Plaintiff's] arm."  (*Id.*)  Thereafter, at around 6:00 p.m., Correctional Officer

MacDonald "conducted a round."  (*Id.*)  Plaintiff "inquired [regarding] Health Services" because

"[he] had swelling on [his] arm," but "was denied."  (*Id.*)  Plaintiff "sent [a] health care kite," but

received "no response."  (*Id.*)

The following day, September 25, 2020, at 10:00 a.m., Nurse MacDowell

"conducted health care rounds," and Plaintiff "showed her [his] bruised and swol[len] arm."  (*Id.*)

Plaintiff "requested assistance," but "was denied."  (*Id.*)

On September 26, 2020, Plaintiff sent another "health care kite," and again received

"no response."  (*Id.*)  That same day, "throughout [Correctional Officer] Wollan's shift[,] he denied

[Plaintiff] health care."  (*Id.*)

2

The next day, September 27, 2020, at 10:00 a.m., Nurse Smith "conducted health care rounds," and Plaintiff "showed her the discoloration on [his] arm." (*Id.*) Plaintiff "requested assistance" and "was denied." (*Id.*)

On September 28, 2020, at 9:00 a.m., A/ADW Batho came to the unit, and Plaintiff "told him [Plaintiff] needed health care." (*Id.*) A/ADW Batho "made a joke and denied [Plaintiff] health care." (*Id.*) Subsequently, at 9:30 a.m., Nurse Buchanon "denied [Plaintiff] healthcare after [he] showed [Nurse Buchanon his] arm which was still bruised." (*Id.*)

On October 1, 2020, Plaintiff "sent in [a] health care kite" and received "no response." (*Id.*)

Based on the foregoing allegations, Plaintiff claims that his Eighth Amendment rights were violated by (i) Defendants Bernhardt and Rush when they used excessive force against him, and (ii) Defendants MacDonald, MacDowell, Wollan, Smith, Batho, and Buchanon when they denied him medical care. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief. (*Id.*, PageID.5.)

## II.     Plaintiff's motions

### A.     Motion for the appointment of counsel

Plaintiff has requested the appointment of counsel. (ECF No. 5.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the

complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel.  *See Lavado*, 992 F.2d at 606.  The Court has carefully considered these factors and concludes that the assistance of counsel is not necessary, at this time, to the proper presentation of Plaintiff's position.  Plaintiff's motion for the appointment of counsel (ECF No. 5) therefore will be denied.

### B.      Motion to dismiss parties

Plaintiff filed a motion to dismiss parties, in which he seeks to dismiss Nurses Tristina Smith and Brenda Buchanon as Defendants from this action.  (ECF No. 6, PageID.64.)  In his motion, Plaintiff explains that he "was misinformed and neither had anything to do with refusing [him] health care."  (*Id.*)

Plaintiff's motion (ECF No. 6) will be granted.  Pursuant to Plaintiff's request in his motion, Plaintiff's claims against Defendants Smith and Buchanon will be dismissed without prejudice.

### C.      Request for entry of default

Plaintiff filed a request for the entry of default against Defendants "for failure to respond to summons."  (ECF No. 11.)  However, Defendants have not yet been served with process in this action, and they are therefore not required to file an answer or motion in response to the complaint at this time.  Accordingly, Plaintiff's request for the entry of default is improper, and his request (ECF No. 11) will be denied.

## III.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

4

more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.      **Eighth Amendment**

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).

1.      **Defendants Bernhardt and Rush**

Plaintiff alleges that his Eighth Amendment rights were violated when Defendants Bernhardt and Rush used excessive force against him.  (Compl., ECF No. 1, PageID.4.)

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain."  *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification."  *Id.*  However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'"  *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)).  Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain."  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim as well.  *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock*

*v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)).  First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383.  Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.  Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).  The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

In this action, Plaintiff alleges that on September 24, 2020, at 5:45 p.m., Defendants Bernhardt and Rush "punched and kneed [Plaintiff's] arm" from the top slot of the cell door. (Compl., ECF No. 1, PageID.4.)  Plaintiff also alleges that Defendant Rush "tased [Plaintiff's] arm." (*Id.*)  The facts, taken as true and in a light most favorable to Plaintiff, are sufficient to state an Eighth Amendment excessive force claim against Defendants Bernhardt and Rush.

### 2.      Defendants MacDonald, MacDowell, Wollan, and Batho

Plaintiff next alleges that Defendants MacDonald, MacDowell, Wollan, and Batho violated his Eighth Amendment rights when they denied him medical care.[1]

With respect to claims regarding inadequate medical care, the Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).  A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).  Obviousness, however, is not strictly limited to what is detectable to the eye.  Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear.  *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though

---

[1] As set forth herein, pursuant to Plaintiff's motion to dismiss parties, Plaintiff's claims against Defendants Smith and Buchanon will be dismissed without prejudice.

the condition was not visually obvious).  If the plaintiff's claim, however, is based on "the prison's

failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or

non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence

in the record to establish the detrimental effect of the delay in medical treatment," *Napier v.*

*Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a

sufficiently culpable state of mind" in denying medical care.  *Brown v. Bargery*, 207 F.3d 863,

867 (6th Cir. 2000).  Deliberate indifference "entails something more than mere negligence," but

can be "satisfied by something less than acts or omissions for the very purpose of causing harm or

with knowledge that harm will result."  *Farmer*, 511 U.S. at 835.  "[T]he official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference."  *Id.* at 837.  To prove a defendant's subjective

knowledge, "[a] plaintiff may rely on circumstantial evidence . . . :  A jury is entitled to 'conclude

that a prison official knew of a substantial risk from the very fact that the risk was obvious.'"

*Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical

treatment states a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105.  As the United

States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to
> constitute an unnecessary and wanton infliction of pain or to be repugnant to the
> conscience of mankind.  Thus, a complaint that a physician has been negligent in
> diagnosing or treating a medical condition does not state a valid claim of medical
> mistreatment under the Eighth Amendment.  Medical malpractice does not become
> a constitutional violation merely because the victim is a prisoner.  In order to state
> a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to
> evidence deliberate indifference to serious medical needs.

9

*Id.* at 105–06 (quotations omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).  "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'"  *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).  The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

In this action, Plaintiff alleges that, following the incident with Defendants Bernhardt and Rush, his arm was "bruised and swol[len]."  (Compl., ECF No. 1, PageID.4.)  With respect to Defendants MacDonald, Wollan, and Batho, Plaintiff does not allege that he told the Defendants that his arm was bruised and swollen; he does not allege that he showed the Defendants his arm; and he does not allege that the bruising and swelling would have been obvious to these Defendants.  Rather, Plaintiff simply asserts that he asked for medical care.  Plaintiff states that when Defendant MacDonald "conducted a round" in Plaintiff's unit, Plaintiff "inquired [regarding] Health Services."  (*Id.*)  Plaintiff states that he told Defendant Batho that he "needed health care," and that "throughout [Defendant] Wollan's shift[,] he denied [Plaintiff] health care." (*Id.*)  However, nothing from the complaint suggests that any bruising or swelling on Plaintiff's arm was visible to these Defendants.

Moreover, Plaintiff does not allege facts from which the Court might infer that, even if the bruising and swelling were obvious, that those conditions demonstrated a serious need for medical treatment.  Although Plaintiff complains that he was not provided treatment, he does not suggest what treatment he required nor does he suggest any consequence of not receiving treatment; consequences that might bolster his claim that treatment was obviously needed. Bruising and swelling are conditions that might well resolve on their own.  *See, e.g.*, *Larkin v. Schroeder*, No. 2:20-cv-111, 2020 WL 4344985, at *5 (W.D. Mich. July 29, 2020) (noting that it was "difficult to infer a serious medical need from the facts Plaintiff ha[d] alleged . . . . Plaintiff does not suggest that his bruising or headache did not resolve on their own").  Plaintiff's allegations, therefore, are insufficient to support an inference that he presented a serious medical need to Defendants MacDonald, Wollan, and Batho for treatment.

Moreover, even if Plaintiff's condition was a serious medical need, such that Plaintiff adequately alleged the objective component, his allegations fall short with regard to the subjective component.  With respect to Defendants MacDonald, Wollan, and Batho, Plaintiff states only that they denied him health care.  (Compl., ECF No. 1, PageID.4.)  Plaintiff provides no further explanation or facts regarding their denial of health care.  There is nothing alleged in the complaint that might distinguish a deliberate indifference to Plaintiff's needs from simple negligence, which *Farmer* has held is not enough for an Eighth Amendment claim.  *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").

Plaintiff's allegations differ with respect to Defendant Nurse MacDowell, in that Plaintiff alleges that when she "conducted health care rounds," Plaintiff "showed her [his] bruised and swol[len] arm;" Plaintiff "requested assistance" and "was denied."  (Compl., ECF No. 1, PageID.4.)  Again, merely stating that Defendant MacDowell saw Plaintiff's bruised and swollen arm does not suffice to show that he was suffering a sufficiently serious medical need.  And Defendant MacDowell's denial of care does not necessarily support an inference that she was deliberately indifferent.  Although it is clear that Plaintiff disagreed with Defendant MacDowell's treatment decision regarding his need, or lack thereof, for medical care for his arm, "a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983."  *Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605 ("[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." (citations omitted)).

Plaintiff's allegations against Defendants simply fail to rise to the level of deliberate indifference.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere

12

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679.  At most, Plaintiff has alleged negligence, which *Farmer* holds is not enough.  *See Farmer*, 511 U.S. at 835.

Additionally, where a healthcare provider, such as Defendant MacDowell, has determined that treatment is not necessary, the other officers' subsequent decisions to not call for healthcare assistance does not necessarily evidence deliberate indifference.  Administrative or custody officials who have no training or authority to supervise healthcare officials cannot be held liable for those officials' inadequate care.  *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (holding that a custody officer was entitled to rely on a medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials) (citing *Birrell*, 867 F.2d at 959).

Furthermore, with respect to Plaintiff's allegation that he received no response to the health care kites that he sent on September 25, 2020, September 26, 2020, and October 1, 2020, Plaintiff does not allege that he sent the health care kites to any of the named Defendants nor does he attribute the lack of response to the kites to any of the named Defendants.  *See* (Compl., ECF No. 1, PageID.4.)  It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Where a

13

person is named as a defendant without an allegation of specific conduct, the complaint, or claim, is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Accordingly, for all of these reasons, Plaintiff has failed to state a claim for deliberate indifference to a serious medical need and such claims will be dismissed.

## Conclusion

Plaintiff's motion for the appointment of counsel (ECF No. 5) and Plaintiff's request for the entry of default (ECF No. 11) will be denied. Plaintiff's motion to dismiss parties (ECF No. 6) will be granted. Pursuant to Plaintiff's request in his motion, Plaintiff's claims against Defendants Smith and Buchanon will be dismissed without prejudice.

Furthermore, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants MacDonald, MacDowell, Wollan, and Batho will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment excessive force claim against Defendants Bernhardt and Rush remains in the case.

An order consistent with this opinion will be entered.

Dated:   February 15, 2022                    /s/  Paul L. Maloney
                                              Paul L. Maloney
                                              United States District Judge